Good morning to the Court. Are you ready to go? Yes, Your Honor. We are prepared to move forward. You may begin. Thank you. May it please the Court, it's an honor to appear before this Court. It's my first time arguing in oral arguments with the Ninth Circuit. Welcome. Thank you. I'd like to reserve three minutes for a reply. Okay. So, the crux of my oral argument is in three parts. Firstly, there is the issue of a time bar argument, which government counsel rate in their reply brief. This issue is addressed in trial court as well. My argument for that issue is that the petitioner falls under the extraordinary circumstances exception. The record is clear that when petitioner was convicted of a state crime in the state of Nevada, he maintained DACA status. He was incarcerated during that protected status and his DACA status expired when petitioner was in state custody. During that time, petitioner did not apply to extend his DACA status. There was no realistic chance at that time for him to be removed to Mexico. He was not in removal proceedings at that point. Can I interrupt you? I'm willing for the moment to accept your argument and to say that he can be excused for missing the one-year application period for asylum. So, for purpose of this question, I'm assuming that he's eligible for asylum at least on that basis. My problem is the seriousness of the death threat. Our case law on death threats is pretty demanding. How is this death threat? He doesn't even know the name of the uncle. The uncle never spoke to him. It comes to him through relatives. Why is this death threat enough to amount to a threat of future persecution? He has no presumption from past persecution. That's a pretty high hurdle and I'm not sure he can get over it. Can you help me with that? Absolutely, your honor. The death threat was not a direct death threat to the petitioner. The death threat was conveyed to the petitioner's ex-boyfriend's family, who then, in hopes of warning him that there's an existence of a death threat, relayed that information to him, to the petitioner, around the time that he was going through his state criminal case. The fact that there was no past harm is important. However, I don't believe that that precludes the very real possibility of future harm. The fact that the petitioner doesn't know the name or the identity of the uncle, in fact, makes it all that much more likely that he would not be able to avoid harm. Realistically, the only place that the petitioner could move and live in Mexico is probably Mexico City, for the simple fact that there is a gay community in Mexico City and he would be able to sort of blend in to that community. However, the petitioner's photograph and name is something that can be Googled. The uncle is aware of the petitioner's name and what he looks like, based on information that the petitioner has received from his family. Do we have any information that the uncle lives in Mexico City or has access to Mexico City? He is a police officer in the state of Michoacan and there was an offer of proof made at the trial level, which was accepted by the trial judge on this issue. And therefore, we have to take that as fact, that there is an uncle of Alejandro's that is a police officer in the state of Michoacan, which is very close to Mexico City, and his status as a law enforcement officer gives him access to certain records. Namely, if the petitioner were to be a victim of any sort of hate crime in Mexico City, he would need to seek assistance from law enforcement. Additionally, any sort of police interaction could subject him to, and likely would subject him to, having his information be logged in some form as a victim of a crime in Mexico City. Counsel, isn't that argument entirely speculative? So, we have to imagine that your client would move to Mexico City, be a victim of a hate crime, report it to the police, and then the uncle access those records, find him, and then kill him. It is somewhat speculative, yes, your honor, but what is not speculative is the fact that if this uncle does have a vendetta against the petitioner, it has been aware that he is in removal proceedings and would be able to ascertain his whereabouts if he were to be placed, or excuse me, if there was a final order of removal, and he would enter Mexico, that information would be available to the uncle. But you started with if. If he was aware, or if he had this vendetta against your client, what evidence do we have? Your client said there is, and he does have a vendetta against him, the uncle does, and he learned that through family members. So, it's not unusual that that information is not available in these types of proceedings, but the ALJ has to determine the reliability of that. What independent evidence was there offered other than your client's testimony that he heard this from a family member? Was that corroborated in any way? There was an attempt to corroborate that information through further testimony. However, your honor, because of the time constraints at the trial level, the trial judge asked me what the testimony would be. I presented an offer of proof, and that testimony was accepted by the trial judge. Additionally, your honor, the trial judge stated in her decision that credibility is not an issue. Under those circumstances, we have to accept the testimony of the petitioner and the offer of proof as fact. Counsel, do you want to reserve some of your time? Yes, I'll reserve a minute and a half. Go ahead, Mr. Lorenz. Sorry, it took me a second to realize I was muted. May it please the court, my name is Jesse Lorenz, and I represent the Attorney General. And I think I'd like to start by noting that petitioner just conceded that his claim right now in oral argument is somewhat speculative, and I think that's pretty dispositive of both his applications for asylum, withholding of removal, and cap protection. It's his burden to show a well-founded fear of future persecution, for withholding of removal and asylum, and a clear probability of torture for cap protection. Excuse me, I wouldn't be so quick to say that he just conceded. Would you argue the facts instead of the meaning of somewhat speculative? Sure, and that's fair. But I think also that that statement is supported by the record here. I mean, we don't have, we have only a testimony that he fears an individual in a state, in a certain state in Mexico, that he thinks is a police officer, but he doesn't know anything about this individual other than that. The threat is not a direct threat. We have, in 2017, he hears of the threat through his former partner's sister. And then in 2020, he hears of the threat through his mother, but she received that information through his former partner's mother. So we don't have any direct and specific threat. But I think the record supports the immigration judges and the board's decision fully here. I mean, we don't have any specific and direct proof of this threat. Counsel, can I ask a question about the tolling issue? The tolling, the... The one-year limitation on asylum claims. Oh, sure, yeah. Your Honor... Grounds to toll the one-year time limit. Why isn't that similar to DACA? Well, and we argue this in our brief, that even if it is similar to DACA, even if he's allowed a reasonable time after the expiration of that DACA or his DACA, from the record, it appears that his DACA expired in 2017. And the point that we would make is he didn't apply for asylum within a reasonable time, almost three years. And that's beyond what this court has found is reasonable. Generally, this court has found that... Just so I understand, the government's position is not that DACA cannot be a tolling event. It's just... We're not... It's the imprisonment was not a tolling event. In this case, the facts of this case are that it was three years after he applied for DACA. Argument, even assuming arguendo, I don't think we're conceding here, but even assuming arguendo that DACA can be a tolling circumstance, here, he waited three years after the expiration of DACA. And so we would argue that it's not a reasonable period of time, which this court does require a reasonable period of time. And generally speaking, this court has found six months to be a reasonable period of time. We have approximately three years here. Is that undisputed, counsel? I think you said it looks like at one point. Is it undisputed on the record? I think it's undisputed. I mean, that was the assertion that he made before the agency, that petitioner made. So I have no reason to dispute it, that his DACA expired in 2017. And the nature of his crime wouldn't have allowed him to reapply for DACA. It would have expired because of... He would have not been eligible for DACA because of the crime. So if 2017 is when he says that the DACA expired, we have no reason to doubt that. Okay. So then he was in prison after DACA expired, and that could toll his time, if we believe that's a tolling event. Why is that not a tolling event? Well, first of all, that argument wasn't raised until the reply brief. It wasn't raised before the agency, so it's not exhausted at this point. Secondly, Your Honor, there is no... There's no support for his argument that counts as a legal disability or an exceptional circumstance. There was nothing preventing him from filing for asylum in 2017. He can do that before he's in removal proceedings. The application itself contemplates that. You can file directly with, I believe, DHS. So there's nothing preventing him from filing in 2017. And it would have made sense for him, under his own theory of the case, to do that, given that he argues he first received this threat in 2017. And additionally, it's not like he was in... He was going to be in prison for the rest of his life. He knew at the outset he had a 36-month, I believe, term of imprisonment. And it was foreseeable that after his DACA expired, after he's been convicted of a crime that he's serving for three years, that eventually removal proceedings would be initiated against him. So it's just... His argument, first of all, is unexhausted, and second of all, it's without any support. I'm sorry, when you say it wasn't presented to the reply brief, the reply brief in this court or reply brief before the BIA? The first time that... I believe the first time, and this is based on the record, but the first time it was a reply brief in this court. I don't believe that argument is in his opening brief in this court. I mean, there was a footnote about the timeliness in his opening brief, but I don't believe he discussed him being incarcerated as a legal disability until his reply brief. So I say, first of all, I think it's unexhausted at this point. Was it raised? Waved, I suppose, might be the more legal appropriate term. Was it raised before the agency? I don't believe so. I don't think it was. I mean, I think... There's an awful lot of vagueness here. I don't believe so. It was or was not. Do you know? I don't believe it was, Your Honor. I don't think so. I'm not trying to be vague here. So I guess you don't know, then, if all you can say is, I don't believe. I guess we can go back and check, but it sounds like you don't know. Sure. No, I'm fairly confident that it's not, but all of his arguments were kind of of this timeline of 2017 not being really an exceptional circumstance. So I think, you know, I suppose you could read into the fact that maybe he's arguing the legal exception is or the incarceration is part of the reason he couldn't file until 2020. But I don't think that was ever explicitly stated as a reason why he couldn't file. Are you saying that the record may not be clear? Is that what you're saying? No, I think the record is clear that he did not raise his argument until this before this court. But his arguments, I think, before the agency are vague enough for someone to read that into. Notwithstanding that, Your Honor, again, there's no legal... Him being incarcerated doesn't present a legal disability. It's not an exceptional circumstance. He could have filed after 2017. He didn't have to be in removal proceedings to file. And even in any event, if this court doesn't find his asylum application untimely, record evidence supports the immigration judge's conclusion that he didn't meet his burden of proof for asylum and holding of removal. So there's several reasons to deny the asylum application. But especially on the merits, I mean, I think there's no firm evidence, direct or specific evidence that he's established a well-founded fear of future persecution. And that's for a number of reasons, because the threat was vague in nature, wasn't directed directly at him. And he didn't show, as was his burden of proof, because he didn't sign for past persecution. He didn't show that he couldn't relocate within Mexico to avoid this uncle. He presented almost no evidence of that. He couldn't relocate to Michoacan under his own testimony. But Mexico is a very large country, and there's no evidence that he couldn't relocate anywhere else to avoid this individual. Your Honor, the same goes for his CAT claim. It was based on a series of suppositions, namely that his uncle would be aware that he's in Mexico, that he would locate him, he would act on his threats, and that the harm would raise to the level of torture. If there's no further questions, Your Honor, we believe the government rests and believes that this petition for review should be denied.  Thank you. Thank you, Your Honor. The issue of whether the petitioner's asylum claim in fear of future persecution is speculative, that is true. It is somewhat speculative, but I would argue that every asylum claim is speculative when it comes to the issue of future persecution. We have to look at the totality of the circumstances. Mr. Mendoza, the petitioner, is a gay man. And if he were to move to Mexico City, that would not offer him protection against people who would persecute and harm him because he's gay, and certainly would not offer him protection against Alejandro's uncle, who has a vendetta against him. And although the threat against the petitioner was not a direct threat, it certainly was not a speculative threat, as opposing counsel has mentioned. And finally, under the case of Bringas-Rodriguez v. Sessions, Ninth Circuit case from 2017, the court ruled in that matter that the fact that Mexico as a nation has made changes to reduce discrimination against homosexual persons does not preclude recognition that persecution at regional and local levels will still support the claim that government was unable or unwilling to control such persecution. And furthermore... Also, do you want to address whether or not you raised the incarceration as a legal disability before the BIA? My recollection and my view of the record is that you did. Thank you, Your Honor. There was some testimony on that issue. The petitioner testified that when he was in state custody, he was going through a lot of mental and emotional turmoil due to the death of his boyfriend. There's no diagnosis of depression. There's no official diagnosis. But I think it's reasonable and fair, based on his testimony, to conclude that at the time he lost his DACA status, when he was in state custody, he did not have the mental state or the foreseeability to know that he would need to apply for asylum. Counsel for the government stated today that it was foreseeable that when he lost his DACA status that he would need to apply for asylum because he would eventually be placed in removal proceedings. But, Your Honor, that is only foreseeable to an attorney for the government that deals in these types of matters. If you look at Mr. Mendoza's state of mind... You want to wrap it up? Yes. It was not foreseeable to him. So that issue of him being in state custody is the sole reason why he did not apply for asylum within the one year. And so he applied as soon as he reasonably could. Once he was placed in removal proceedings, he engaged counsel and applied for asylum shortly after that. Thank you, Counsel. Congratulations on finishing your first argument for the night, sir. Thank you. Thank you both. This case will be submitted.
judges: FLETCHER, BUMATAY, Silver